UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


LISA FORSELL PERRY and        )
GEORGE WELCH PERRY,           )
                             )
          Plaintiffs,         )
                             )
v.                            )          No. 1:04-CV-195
                             )
KELLY HERD, individually, and )          Judge Curtis L. Collier
KELLY HERD d/b/a GOLD CREATIONS, )
and KELLY HERD, LLC, a Tennessee )
Limited Liability Company     )
                             )
          Defendants.         )


# M E M O R A N D U M

Before the Court is a motion for summary judgment on Plaintiffs' claims filed by Defendant Kelly Herd d/b/a "Gold Creations" ("Defendant Gold Creations") (Court File No. 28). Additionally, Plaintiffs Lisa Forsell Perry ("Plaintiff Lisa Perry") and George Welch Perry ("Plaintiff George Perry") (collectively referred to as "Plaintiffs") have filed a motion for partial summary judgment on the counterclaims and two defenses pursued by Defendant Kelly Herd, individually ("Defendant Kelly Herd), Defendant Gold Creations, and Defendant Kelly Herd, LLC ("Defendant Kelly Herd LLC") (collectively referred to as "Defendants")(Court File No. 41). In deciding these motions, the Court has considered the parties' briefs and supporting documentation (Court File Nos. 28, 29, 38, 41, 42, 44, 45, and exhibits thereto).

The Court need not conduct an evidentiary hearing to decide these motions, and, for the following reasons, Defendants' motion for summary judgment (Court File No. 28) will be

**GRANTED IN PART** and **DENIED IN PART** and Plaintiffs' motion for partial summary judgment (Court File No. 41) will be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Defendants' motion for summary judgment will be **GRANTED** on statute of limitations grounds as to the following works:  (1) Original Reiner Pendant (VA 583-009); (4) Plain Jumper (VA 583-009); (5) Plain Jumper Earrings (VA 583-009); (6) Cindy Mare (VA 583-009); (7) Racehorse Earrings  (VA 581-177); (9) Western Pleasure Pendant (Loop)  (VA 581-177); (10) Reiner Earrings (Half Loop) (VA 581-177); (14) Large Halter Pendant (VA 1-162-559); and (17) Paso Fino Pendant (VA 564-818).  Plaintiffs claims related to those works will be **DISMISSED**.

(2) Defendants' motion for summary judgment will be **DENIED** on statute of limitations grounds as to the following works:  (2) Amy's Jumper (VA 583-009); (3) Western Pleasure Horse Pendant and Earrings (VA 581-177); (8) Western Pleasure Earrings (Half Loop)  (VA 581-177); (11) Cutter Horse Pin  (VA 567-244); (12) Cutter Horse Pendant  (VA 1-162-559); (13) Hunt Seat Pendant  (VA 1-162-559); (15) Large Reiner  (VA 564-818); (16) Large Western Pleasure Horse (VA 564-818); (18) Large Riderless Western Pleasure Pendant  (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner  (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant  (VA 1-096-758); (23) Large Halter Horse Pendant (VA 1-099-105); and (24) Halter Pendant  (VA 873-384);

(3) Defendants' motion for summary judgment will be **DENIED** on the basis of laches;

(4) Defendants' motion for summary judgment will be **DENIED** on the basis of lack of access to Plaintiffs' works; and

(5) Defendants' motion for summary judgment will be **DENIED** on the basis of the first sale doctrine.

(6)  Plaintiffs' motion for summary judgment will be **GRANTED** as to Defendants' counterclaim based on its ownership of certain copyrights as works for hire and all claims based on such ownership will be **DISMISSED**;

(7)  Plaintiffs' motion for summary judgment will be **GRANTED** as to Defendants' counterclaim of infringement of Defendants' works with copyright registration numbers VA 731-072, VA 731-096, and VA 731-084 being infringed by Plaintiffs' work with copyright registration number VA 583-009;

(8)  Plaintiffs' motion for summary judgment on Defendants' work for hire defense will be **GRANTED** and that defense will be **STRICKEN** from Defendants' answer**;**

(9)  Plaintiffs' motion for summary judgment on Defendants' joint authorship defense will be **DENIED**; and

(10)  Plaintiffs' motion for summary judgment on Defendants' fair use defense will be **GRANTED** and that defense will be **STRICKEN** from Defendants' answer.


I.    <u>STANDARD OF REVIEW</u>

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106

S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  The standard for summary judgment mirrors the standard for directed verdict.  *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52, 106 S. Ct. at 2512.  There must be some probative evidence from which the jury could reasonably find for the nonmoving party.  If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    RELEVANT FACTS

The facts in this matter are largely not in dispute.  Plaintiff Lisa Perry is an artist who has been creating bronze sculptures and equestrian jewelry since 1980 (Court File No. 28, Exhibit 4,

Deposition of Lisa Perry ("Lisa Perry Depo.") at 83). Plaintiff Lisa Perry's husband, Plaintiff George Perry, works with her in a jewelry business (*see generally* Deposition of George Perry ("George Perry Depo.") pp. 23-25). Lola Herd and her husband Tom Herd sold jewelry together through a business known as Gold Creations beginning in the early 1980s (Court File No. 28, Exh. 3, Affidavit of Mrs. Lola Herd ("Lola Herd Aff.") ¶ 2).

Some of the claims in this case require a brief explanation of the jewelry making process used by both Plaintiffs and Defendants. The process begins with an artist carving the desired form out of wax (Lisa Perry Depo. at 97). That wax carving (called simply a "wax") is then placed in a cylinder and surrounded by a casting material called "investment" (Court File No. 41 n. 1). The wax, surrounded by the investment, is then placed in a kiln, which causes the wax to melt and leaves behind a hollow space in the shape of the carved wax (*id.*). This hollowed form can then be used to cast jewelry out of molten metal such as gold, silver, or brass (*id.*).

Plaintiff Lisa Perry met Tom and Lola Herd in 1985 at a horse show where Mrs. Perry's equestrian jewelry booth was next to the Gold Creations booth (Lisa Perry Depo at 114; Lola Herd Aff. ¶ 4). Lola Herd then entered a business relationship with Plaintiff Lisa Perry in which Mrs. Perry consigned certain pieces of equestrian jewelry to Gold Creations, which sold those pieces at its booth at horse shows (Lisa Perry Depo. at 116, 121; Court File No. 38, Exh. 8, Deposition of Lola Herd ("Lola Herd Depo.") pp 52-54).

At some point in 1986 or 1987, the relationship changed and Plaintiff Lisa Perry began carving waxes for Lola Herd (Lisa Perry Depo. at 122; Lola Herd Aff. ¶ 5). Lola Herd's customers would bring ideas to her or request certain equestrian pieces, then Mrs. Herd would make "a rough drawing, a rough sketch, but general idea," or find photos of horses and give them to Plaintiff Lisa

Perry to carve into wax (Lola Herd Depo. at 62-63, *see also id.* at 37-39). Lola Herd testified Plaintiff Lisa Perry would then bring these ideas to life in her carvings (*id.* at 63). Lola Herd also would make suggestions for improvement to the wax carvings (*id.* at 79). Lola Herd once requested Plaintiff Lisa Perry create a second wax carving of one of her ideas because the customer rejected Mrs. Perry's original carving (*id.*). However, Lola Herd never carved a wax herself (*id.* at 50-51). Plaintiff Lisa Perry did not have the capacity to produce the quantity of pieces required by Lola Herd herself, so she delivered her waxes to a third-party manufacturer that would convert them into finished, saleable jewelry pieces (Lisa Perry Depo. at 97-100). One of these manufacturers was Judy Dobbs. Plaintiff Lisa Perry and Lola Herd never entered into any sort of written agreement regarding these carvings (Lola Herd Depo. at 29; Lisa Perry Depo. at 392-93).

Lola Herd's son Defendant Kelly Herd became involved in Gold Creations in 1987; one of his early ideas was producing full-color, glossy catalogs of Gold Creations jewelry (Lola Herd Aff. ¶ 11). In or about 1988, Plaintiff Lisa Perry and Lola Herd had a disagreement in which Mrs. Perry claimed Mrs. Herd was wrongfully copying some of Mrs. Perry's jewelry designs (*id.* ¶ 10). The manufacturer who had been converting Plaintiff Lisa Perry's waxes into jewelry pieces, Morning Star Jewelry, assisted the two in resolving their differences, and they divided up the molds for disputed jewelry designs (Lola Herd Aff. ¶ 10).

Defendant Kelly Herd began his own business in 1992, called Golden Herd Creations (Court File No. 5, Counterclaim ¶ 8). Lola Herd states Gold Creations' relationship with Plaintiffs ended in 1992, when Defendant Kelly Herd began using a different artist, Maury Cain, to carve jewelry designs and also purchased the copyrights to equestrian jewelry designs by Suzann Fiedler (Lola Herd Aff. ¶¶ 12, 13; Court File No. 28, Exh. 4, Affidavit of Kelly Herd ("Kelly Herd Aff.") ¶ 6).

In January 1997, Defendant Kelly Herd and his brother Tommy Herd purchased Gold Creations from their parents and ceased using the name Golden Herd Creations; in June 2000 Defendant Kelly Herd and his brother ended their business relationship (Court File No. 5, Counterclaim ¶¶ 9-10).

At some point as early as 1992, Plaintiffs came to believe Defendants were reproducing and selling infringing copies of Plaintiffs' copyrighted jewelry designs in the Gold Creations booth at horse shows (*see generally* Lisa Perry Depo. at 161-64, 251-64, 285-92. 301-08; *see also* Exh. 3D to Kelly Herd Aff.). On July 27, 1992, Plaintiffs' then-attorney Louis Forsell sent a letter to Defendants citing allegations of copyright infringement (*see* Kelly Herd Aff., Exh. 81 thereto; *see also* Plaintiffs' responses to Defendants' interrogatories, Court File No. 28, Exh. 2 at 7-9). Although Mr. Forsell and Defendants' then-attorney D. Mitchell Bryant corresponded about this issue, these claims were not resolved at that time (Kelly Herd Aff. ¶ 10). At the 2001 Junior World Show, Plaintiff Lisa Perry and her daughter approached the Gold Creations booth and confronted Lola Herd with accusations of copyright infringement (Lisa Perry Depo. at 303- 07).

Gold Creations allows customers to "trade in" jewelry they already own towards the purchase price of new jewelry; Gold Creations then resells those trade ins (Kelly Herd Aff. ¶ 9). Defendant Kelly Herd states "[b]ecause the jewelry business at horse and trade shows is largely dependent on repeat customers and 'word of mouth' referrals, I often take in these 'trades' whether such jewelry items sought to be traded are Gold Creations' original jewelry designs or not" (Kelly Herd Aff. ¶ 9). Defendant Kelly Herd further states he has accepted Plaintiff Lisa Perry's designs on trade from customers, and when he takes a piece of jewelry on trade in, he displays them in his display cabinets "for some time until they are sold," which may take weeks, months, or years (Kelly Herd Aff. ¶ 9). Defendant Kelly Herd asserts any of Plaintiff Lisa Perry's designs she may have

seen in the Gold Creations booth in 2001 were jewelry items he was reselling after taking them in on trade (Kelly Herd Aff. ¶ 9).

Plaintiffs now allege Defendants have infringed the copyrights they own in 24 separate works, numbered and identified by Plaintiffs in their responses to Defendants' interrogatories (Court File No. 28, Exh. 2 at 7-8), by copying, using, altering, and selling these works (*see* Court File No. 1, Complaint, ¶ 22). Defendants (Counter-plaintiffs) have alleged in counterclaims Plaintiffs (Counter-defendants) "have been manufacturing, marketing and selling copies of jewelry that they produced as a 'work for hire' for the Counter-Plaintiff's predecessor-in-interest, Mrs. Lola Herd d/b/a Gold Creations" since Spring 1992 without any permission to do so (Court File No. 5, Counterclaim ¶ 16). Counter-plaintiffs also allege Counter-defendants "have been manufacturing, marketing and selling infringing copies of Counter-Plaintiff's Copyrighted Material without Counter-Plaintiff's permission" (*id*., Counterclaim ¶ 17).

III.     DISCUSSION:  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A.     Statute of Limitations

Defendants argue, assuming *arguendo* they have infringed some of Plaintiff's copyrighted jewelry designs, Plaintiffs are barred from any relief because the statute of limitations on those claims has run (Court File No. 29 at 17). Because this is an affirmative defense, Defendants bear the burden of proof. *See Fonseca v. CONRAIL*, 246 F.3d 585, 590-91 (6th Cir. 2001). To prevail on this affirmative defense, Defendants must prove both (1) the statute of limitations has run, and (2) no genuine issue of material fact exists as to when Plaintiffs' cause of action accrued. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). If Defendants meet this burden, the

burden then shifts to Plaintiffs to establish an exception to the statute of limitations. *Id.* However, if Defendants fail to meet their burden of proof, Plaintiffs have no obligation to proffer any additional evidence to rebut the statute of limitations defense. *Fonseca*, 246 F.3d at 590-91.

Any claim under the Copyright Act must be brought within three years from the accrual of the claim in question. 17 U.S.C. § 507(b); *Broad. Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 782, n.12 (6th Cir. 2005). Plaintiffs filed this case on July 1, 2004, therefore any claim they assert must have accrued on or after July 1, 2001.

A cause of action accrues when a plaintiff knows of the infringement or is chargeable with such knowledge. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004) (*citing Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)). Each act of infringement is a distinct harm, therefore the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period. *Id.* (*citing Roley*, 19 F.3d at 481; *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992); *Hoste v. Radio Corp. of Am.*, 654 F.2d 11, 11 (6th Cir. 1981) (per curiam); *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1110-11 (2d Cir. 1977)).

Plaintiffs claim Defendants have infringed 24 of their copyrighted jewelry designs (*see* chart, Court File No. 38, pp. 2-3). Plaintiffs concede the alleged infringements of nine works were discovered before the statute of limitations period began to run (Court File No. 38, p. 11). Therefore, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 28) with regard to those works[1]: (1) Original Reiner Pendant (VA 583-009); (4) Plain Jumper (VA

---

[1]The parties throughout their briefs refer to Plaintiffs' works as they were numbered and identified by Plaintiffs in their responses to Defendants' interrogatories, Court File No. 28, Exh. 2 at 7-8, therefore the Court will adopt this numbering system to identify works, as well as the works'

583-009); (5) Plain Jumper Earrings (VA 583-009); (6) Cindy Mare (VA 583-009); (7) Racehorse Earrings (VA 581-177); (9) Western Pleasure Pendant (Loop) (VA 581-177); (10) Reiner Earrings (Half Loop) (VA 581-177); (14) Large Halter Pendant (VA 1-162-559); and (17) Paso Fino Pendant (VA 564-818).[2]

Defendants do not submit any specific statute of limitations arguments with regard to twelve other works Plaintiffs allege were infringed (*see* Court File Nos. 29, 44). By failing to state when these alleged infringements accrued such that they are outside the statutory period, Defendant has failed to meet its burden as stated above. *See Campbell,* 238 F.3d at 775. Therefore, the Court will **DENY** Defendants' motion for summary judgment on statute of limitations grounds on the following works: (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant (VA 1-162-559); (15) Large Reiner (VA 564-818); (16) Large Western Pleasure Horse (VA 564-818); (18) Large Riderless Western Pleasure Pendant (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); (23) Large Halter Horse Pendant (VA 1-099-105); (24) Halter Pendant (VA 873-384).

The parties dispute whether the claims regarding three other works accrued during the statutory period. Those works are: (2) Amy's Jumper (VA 583-009); (3) Western Pleasure Horse

---

copyright registration numbers, which appear in parentheses after the title of each work.

[2]Defendants in their reply brief state Plaintiffs admit they are barred by the statute of limitations from raising claims related to (2) Amy's Jumper (VA 583-009); (3) Western Pleasure Horse Pendant and Earrings (VA 581-177) and (8) Western Pleasure Horse Earrings (Half Loop) (VA 581-177) (Court File No. 44 at 2, n.1). However, Plaintiffs in their response brief contest the date their claims related to these works accrued (Court File No. 38 at 11-12), therefore the above list is correct as to the works Plaintiffs concede are barred by the statute of limitations (*see generally* Court File No. 38).

Pendant and Earrings (VA 581-177); and (8) Western Pleasure Earrings (Half Loop) (VA 581-177). Plaintiffs have submitted five invoices dated from July 15, 2002 through February 10, 2004 showing sales by Defendant Gold Creations to support their assertion Defendants infringed these designs during the statutory period (Exh. 2-6 to Court File No. 38). These invoices identify the item sold by Defendants' catalog numbers rather than any description of the jewelry design (*id.*). However, Plaintiffs in their response brief created a chart detailing the work sold by Defendants in each invoice and Plaintiffs' design Defendants' work allegedly infringes (*see* Court File No. 28 at 8). Plaintiffs allege in each of these five sales, Defendants sold a piece of jewelry from Defendants' catalog that infringed one of the three above-listed designs copyrighted by Plaintiffs.

Defendants argue these five invoices reflect sales of their own jewelry designs, not Plaintiffs' copyrighted jewelry designs, therefore no infringement occurred with regard to these three designs during the statutory period. Defendants point to the fact these invoices all reflect Defendants' catalog numbers for the works sold, for which Defendants state they own valid copyrights, and Defendants' sworn testimony they have not sold any of Plaintiffs' jewelry pieces (Defendants' responses to Plaintiffs' interrogatories, Court File No. 38, Exh. 7 at 12-13). However, the Court believes Defendants mistake Plaintiffs' argument here. Plaintiffs do not argue Defendants were selling Plaintiffs' actual works in these transactions, but rather Defendants' own works sold in these transactions were infringing copies of Plaintiffs' copyrighted designs (see Court File No. 38 at 7, ". . . despite sworn interrogatory responses to the contrary, Defendants' own invoices evidence sales by Defendants of Plaintiffs' *designs*.") (emphasis added). While no factual dispute exists relative to these sales, since all parties agree Defendants sold their own works, a legal dispute exists as to whether Defendants' works sold in these transactions infringed on Plaintiffs' works. Taking the

facts in the light most favorable to Plaintiffs, the non-moving parties in this motion, *see Matsushita*, 475 U.S. at 587-88, these invoices support Plaintiffs' allegation Defendants sold infringing copies of these three jewelry designs during the statutory period.  Defendants' argument Plaintiffs have not shown any infringing acts during the statutory period with respect to these three works must be rejected since Plaintiffs have alleged five infringing acts during the period and supported that allegation with documentation.

Therefore, because Defendants have not met the burden of proof on the statute of limitations defense, *see Campbell,* 238 F.3d at 775, the Court will **DENY** Defendants' motion for summary judgment on statute of limitations grounds on the following works:  (2)  Amy's Jumper  (VA 583-009);  (3)  Western Pleasure Horse Pendant and Earrings (VA 581-177);  (8)  Western Pleasure Earrings (Half Loop)  (VA 581-177).

### B.     Laches

Defendants next argue Plaintiffs are barred by the doctrine of laches from pursuing their claims.  The courts of appeal are split as to whether laches is available as a defense under the Copyright Act, *see* 3-12 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.06 (2003) (hereinafter "Nimmer"), but laches is available as an affirmative defense in a copyright action in the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit").  *Roger Miller Music,* 396 F.3d at 783, n.13 (*citing Hoste v. Radio Corp. of Am.*, 654 F.2d 11 (6th Cir. 1981)).

The laches defense arises where a plaintiff has negligently and unintentionally failed to protect its rights.  *Coalition for Govt Procurement v. Fed. Prison Indus*., 365 F.3d 435, 466 (6th Cir. 2004) (*quoting Nartron Corp. v. STMicroelectronics*, 305 F.3d 397, 408 (6th Cir. 2002)).  Like the statute of limitations defense, the doctrine of laches is an affirmative defense, thus the party asserting

it bears the burden of proof. *Hoste*, 654 F.2d at 12. To prevail on this defense, Defendants must show (1) Plaintiffs delayed enforcing their rights for an unreasonable length of time and (2) Defendants have been materially prejudiced by the delay. *Coalition for Govt Procurement*, 365 F.3d at 466 (*quoting Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000)).

### 1. Unreasonable Delay by Plaintiffs

There is a strong presumption a plaintiff's delay in bringing suit is reasonable as long as the analogous statute of limitations has not lapsed. *Id.* (*citing Herman Miller, Inc. v. Palazzetti Imp. & Exps., Inc*., 270 F.3d 298, 321 (6th Cir. 2001). The Sixth Circuit has held, "only rarely should laches bar a case before the analogous statute has run." *Tandy Corp. v. Malone & Hyde, Inc*., 769 F.2d 362, 366 (6th Cir. 1985)). As delineated above, Plaintiffs' only claims surviving Defendants' motion for summary judgment are those not clearly barred by the statute of limitations in the Copyright Act. *See* 17 U.S.C. § 507(b). Therefore, a strong presumption against laches arises with regard to these claims.

The period of delay for laches begins to run when a plaintiff had "actual or constructive knowledge of the alleged infringing activity." *Nartron*, 305 F.3d at 408 (*quoting Dana Corp. v. IPC Ltd. Partnership*, 674 F. Supp. 581, 583 (E.D. Mich. 1987)). Defendants argue Plaintiffs were "aware" of at least some of Defendants' alleged infringing works as early as July 27, 1992, when Plaintiffs' attorney Louis Forsell sent a letter to Defendants citing allegations of copyright infringement (*see* Kelly Herd Aff., Exh. 81 thereto; *see also* Plaintiffs' responses to Defendants' interrogatories, Court File No. 28, Exh. 2 at 7-9). Defendants point to Plaintiffs' own responses to Defendants' interrogatories in support of their laches argument (*see* Plaintiffs' responses to

Defendants' interrogatories, Court File No. 28, Exh. 2 at 7-9). The Court finds it necessary to evaluate each claim of infringement separately for laches purposes rather than all claims generally.

### a. Certain Date of Discovery of Alleged Infringements

Plaintiffs specify they first discovered alleged infringements by Defendants on July 5, 2001, at the American Paint Horse Association World Championship in Fort Worth, Texas, of the following ten works: (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant (VA 1-162-559); (15) Large Reiner (VA 564-818); (16) Large Western Pleasure Horse (VA 564-818); (18) Large Riderless Western Pleasure Pendant (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); and (23) Large Halter Horse Pendant (VA 1-099-105) (Plaintiffs' responses to Defendants' interrogatories, Court File No. 28, Exh. 2 at 8-9). Additionally, Plaintiffs state they first discovered an alleged infringement of (24) Halter Pendant (VA 873-384) in August 2001 at the Palomino Championship show in Tulsa, Oklahoma, and of (20) Riderless Reiner (VA 1-094-239) in May 2004 at a show in Oklahoma City, Oklahoma (*id.* at 9).

The earliest discovery dates for these twelve works are within the relevant statutory period, which began July 1, 2001. Defendants have not pointed to any evidence showing Plaintiffs actually first discovered these alleged infringements outside the statutory period, therefore Defendants have not overcome the strong presumption against laches in this case where the analogous statute of limitations has not run. *Coalition for Gov't Procurement,* 365 F.3d at 466. Because Defendants have not met their burden of proof on the first element of the laches defense with respect to these works, the Court will **DENY** their motion for summary judgment on the basis of laches as to (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant

(VA 1-162-559); (15) Large Reiner (VA 564-818); (16) Large Western Pleasure Horse (VA 564-818); (18) Large Riderless Western Pleasure Pendant (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); (23) Large Halter Horse Pendant (VA 1-099-105) (Plaintiffs' responses to Defendants' interrogatories, Court File No. 28, Exh. 2 at 8-9); and (24) Halter Pendant (VA 873-384).

### b. Uncertain Date of Discovery of Alleged Infringements

Plaintiffs state they "are not sure of the date of discovery" of the alleged infringements of (2) Amy's Jumper (VA 583-009); (3) Western Pleasure Horse Pendant and Earrings (VA 581-177); and (8) Western Pleasure Earrings (Half Loop) (VA 581-177) (*id*. at 7). As to (2) Amy's Jumper (VA 583-009) Plaintiffs specify they "discovered an infringing piece in [Defendants'] 3rd edition catalog" (*id*.) which was published in 1994. With regard to (3) Western Pleasure Horse Pendant and Earrings (VA 581-177), Plaintiffs state they "first discovered this violation in [Defendants'] first catalog," published in 1992 and also "have discovered the infringing earrings in the 3rd edition catalog" (*id*.) published in 1992. Additionally, as to (8) Western Pleasure Earrings (Half Loop) (VA 581-177) Plaintiffs aver "this violation was first discovered in [Defendants'] silver catalog" (*id*. at 8) which was published in 1998.

Nowhere in Plaintiffs' interrogatory responses or Kelly Herd's Affidavit, on which Defendants rely in their laches argument, is Plaintiffs' discovery date pinpointed as to these three works, and Defendants do not come forward with any other evidence showing Plaintiffs first discovered the alleged infringements before the statute of limitations period began, or should be charged with constructive knowledge. Viewing the facts in the light most favorable to Plaintiffs,

the non-moving parties in this motion, *see Matsushita*, 475 U.S. at 587-88, the evidence Defendant has entered into the record shows Plaintiffs discovered the infringements in certain editions of Defendants' catalogs, but does not show *when* they viewed these catalogs, whether at the time the catalogs were published or some later date when they were brought to their attention. Without presenting proof on this point, Defendants have not overcome the strong presumption against laches in this case where the analogous statute of limitations has not run. *Coalition for Gov't Procurement,* 365 F.3d at 466. Therefore, Defendants have not met their burden of proof on the first element of the laches defense with respect to these three works, and the Court also will **DENY** their motion for summary judgment on the basis of laches as to (2) Amy's Jumper (VA 583-009); (3) Western Pleasure Horse Pendant and Earrings (VA 581-177); and (8) Western Pleasure Earrings (Half Loop) (VA 581-177).

### C.     Infringement

Under the Copyright Act, the owner of a copyright has the exclusive right to copy or sell the copyrighted work. 17 U.S.C. §§ 106(1), (3). Plaintiffs claim Defendants infringed their copyrights in 24 copyrighted jewelry designs listed in the schedule in their response to Defendants' motion for summary judgment (*see* Court File No. 38, pp. 2-3) by copying, using, altering, and selling these works (*see* Court File No. 1, Complaint, ¶ 22). However, the Court will analyze only those 15 pieces upon which Plaintiffs' claims are not barred by the statute of limitations, as analyzed above.

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . ." 17 U.S.C. § 501(a). A claim for copyright infringement requires proof of "(1) ownership of a valid copyright in the [work] at issue and (2) that the defendant copied protectable

elements of the work." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)(*citing Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)). The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter). *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 534-35 & n.14 (5th Cir. 1994); *see generally* 4-13 Nimmer § 13.01[B] (2003). If, as is often the case, the plaintiff has no direct evidence of copying, he can establish the second element by showing (a) the defendant had access to the copyrighted work and (b) the copyrighted work and the allegedly copied work are substantially similar. *Id.*

### 1. Ownership of Valid Copyright

Defendants in their motion for summary judgment do not contest Plaintiffs own valid copyrights to the 15 works still at issue in this case (see Court File No. 29), which are presumptively established by the copyright registration documents Plaintiffs attached to their complaint (*see* exhibits to Court File No. 1), *Lexmark*, 387 F.3d at 534, therefore the Court will proceed to the second element of Plaintiffs' copyright claim.

### 2. Copying

#### a. Access

The Sixth Circuit has held "[a]ccess is essentially [viewing] or having a reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (*quoting Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999); *Tree Publ'g Co. v. Warner Bros. Records*, 785 F. Supp. 1272, 1274 (M.D. Tenn. 1991)) (internal quotation marks and brackets omitted).

Plaintiffs contend Defendants had access to their works because (1) the parties transacted business together in the past, with Plaintiffs consigning and wholesaling their designs to Defendants or their predecessor in interest, Lola Herd, (2) Defendants attend and compete for sales at the same horse shows and trade show events, and (3) Defendants have acknowledged taking in on trade Plaintiffs' works (Court File No. 38 at 5, *see also* Exh. 7 thereto; Lisa Perry Depo. at 401; Lola Herd Depo. at 53-54). Such opportunities to view Plaintiffs' designs and copy them meet the access prong unless Defendants can show they did not in fact have an opportunity to view Plaintiffs' designs before creating their allegedly infringing works.

Defendants do not dispute Plaintiffs' assertions regarding the many occasions on which they had the opportunity to view Plaintiffs' works, but rather argue each work Plaintiffs allege they infringed was created *after* Defendants created their own allegedly infringing work. Since Plaintiffs' works all were created *after* Defendants' allegedly infringing works, Defendants argue it would have been impossible for Defendants to have had access to those works when creating their own works, therefore Plaintiffs cannot meet this first prong of the copyright infringement analysis. *See* 4-13 Nimmer § 13.02 ("By simple logic, it is impossible to *copy* something that does not exist.") (quoting *Christian v. Mattel, Inc*., 286 F.3d 1118, 1128 (9th Cir. 2002) (emphasis added in Nimmer)).

In support of this argument as to ten of Plaintiffs' works, Defendants created a chart in their memorandum setting out the year Plaintiffs listed as the creation date in their copyright registration documents, and the date Defendants created the work they believe Plaintiffs allege infringes Plaintiffs' work based on their copyright registration documents. Defendants set out these same dates in the body of their memorandum with regard to one other work (Court File No. 29, pp. 14-

15).[3]

Before addressing Plaintiffs' response to this argument, the Court would note it finds the evidence presented in this chart unpersuasive to show Defendants lacked access to two of Plaintiffs' works, (15) Large Reiner (VA 564-818) and (16) Large Western Pleasure Horse (VA 564-818), which were created in 1992, the same year Defendants created their allegedly infringing works (*see id.*). Because Plaintiffs have shown Defendants had access to these works, as outlined above, meeting their burden of proof on this element, and Defendants have not come forward with any evidence showing their works were created prior to Plaintiffs' works during 1992 such that Defendants had no access to Plaintiffs' works, Defendants have not shown they are entitled to prevail as a matter of law, Fed. R. Civ. P. 56(c), and the Court will **DENY** Defendants' motion for summary judgment based on a lack of access to (15) Large Reiner (VA 564-818) and (16) Large Western Pleasure Horse (VA 564-818).

With regard to the other nine works Defendants list in their chart and memorandum, Plaintiffs respond Defendants are comparing apples to oranges, and the works Defendants state they created before Plaintiffs' works at issue in this lawsuit are not those Plaintiffs allege are Defendants' substantially similar, infringing works in this lawsuit (Court File No. 38 at 6). As an example, Plaintiffs point to their work (6) Cindy Mare (VA 583-009), which Defendants compare to their

---

[3] This chart sets out the creation dates for the following ten works by Plaintiffs that are not barred by the statute of limitations: (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant (VA 1-162-559); (15) Large Reiner (VA 564-818); (16) Large Western Pleasure Horse (VA 564-818); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); and (23) Large Halter Horse Pendant (VA 1-099-105) (Court File No. 29 at 15). Defendants also, in the body of their memorandum, set out the creation date for (18) Large Riderless Western Pleasure Pendant (VA 1-110-802) (*id.* at 14).

work "Waiting Out the Storm" (VA 10-386) in their memorandum evaluating dates of creation (Court File No. 29 at 15). Plaintiffs argue when these two pieces are observed side by side, other than the fact both of these pieces contain two horses, they are not at all similar, so Defendants' argument on impossibility of access must fail (*see* Exh. 1 to Court File No. 38). The Court agrees with Plaintiffs, after comparing these two works, they are not similar. While Plaintiffs unfortunately chose to illustrate this argument with their work (6) Cindy Mare (VA 583-009), any claims upon which they later conceded are barred by the statute of limitations (Court File No. 38 at 11), this does not reduce the effectiveness of this argument. Defendants did not respond to this argument in their reply brief (Court File No. 44).

The Court finds there is a genuine dispute as to the material fact of whether Defendants had access to these nine works, therefore the Court will **DENY** Defendants' motion for summary judgment based on a lack of access to (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant (VA 1-162-559); (18) Large Riderless Western Pleasure Pendant (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); and (23) Large Halter Horse Pendant (VA 1-099-105) (Court File No. 29 at 15).

To support their argument they did not have access to two other works not barred by the statute of limitations, (3) Western Pleasure Horse Pendant and Earrings (VA 581-177) and (8) Western Pleasure Earrings (Half Loop) (VA 581-177), Defendants have submitted a canceled check, #1690, dated November 25, 1986 from Defendant Gold Creations' account payable to Judy Dobbs, with the memo line "Reiner & Pleasure small" (Lola Herd Aff., Collective Exhibit 2A-1 thereto, p.

2).  Defendants state this check was payment to Judy Dobbs for her work casting Lola Herd's design of a pleasure horse, and proves they did not have access to (3)  Western Pleasure Horse Pendant and Earrings (VA 581-177) and (8)  Western Pleasure Earrings (Half Loop) (VA 581-177), because Plaintiffs did not create those works until 1988, two years after Defendants' designs for which this check was written were created.  Defendants have not specified which of its works, either by title of copyright registration number, this check evidences were created prior to Plaintiffs' creation of (3)  Western Pleasure Horse Pendant and Earrings (VA 581-177) and (8)  Western Pleasure Earrings (Half Loop) (VA 581-177).  The Court cannot evaluate this argument without being able to compare the work Defendants allege they created prior to Plaintiffs' work to the work Plaintiffs contend is being infringed.  Therefore, taking the evidence in the light most favorable to the non-moving party, Plaintiffs, who have presented sworn testimony Defendants did have access to Plaintiffs' works, there is a genuine dispute over the factual issue of access, and the Court will **DENY** Defendants' motion for summary judgment on the ground of no access to (3)  Western Pleasure Horse Pendant and Earrings (VA 581-177) and (8)  Western Pleasure Earrings (Half Loop) (VA 581-177).

Defendants have not submitted any arguments showing they did not have access to Plaintiffs' final two works not barred by the statute of limitations, (2)  Amy's Jumper (VA 583-009) and (24) Halter Pendant  (VA 873-384).  Defendants generally point to the invoices and canceled checks contained in the exhibits attached to Lola Herd's Affidavit (Exh. 3 to Court File No. 28, labeled Collective Exhibits 2A1-3) in arguing Lola Herd designed Defendants' allegedly infringing pieces before Plaintiffs designed these two pieces, but some of the invoices are illegible, and the Court in reviewing these documents has not found any invoice or check referring to a "jumper" or a "halter." Because Defendants have not come forward with any evidence to refute Plaintiffs' sworn testimony

Defendants did have access to Plaintiffs' works (2) Amy's Jumper (VA 583-009) and (24) Halter Pendant (VA 873-384), Defendants have not met their burden on summary judgment of showing there is no dispute as to this issue of material fact. Fed. R Civ. P. 56(c). Therefore the Court will **DENY** Defendants' motion for summary judgment on the basis of a lack of access to these two works.

> **b.**      **Substantial Similarity**

Neither party submitted any arguments related to the substantial similarity between these two works, therefore the Court cannot address this second part of the infringement test.

## D.      First sale doctrine

Defendants finally argue they should be granted summary judgment on Plaintiffs' claims relating to several works[4] because they took these in on trade and their resale of these items was not infringing under the first-sale doctrine (Court File No. 44 at 5). The first-sale doctrine, originally developed by the courts, was codified in the Copyright Act, which states, "[n]otwithstanding the provisions of section 106(3)[5], the owner of a particular copy or phonorecord lawfully made under

---

[4]Defendants list certain works as those they took in on trade in their reply brief, however, Defendants listed different works as those they took in on trade in their sworn responses to Plaintiffs' interrogatories (*see* Exh. 7 to Court File No. 38). The Court will rely on the latter list in analyzing this argument, which includes: (11) Cutter Horse Pin (VA 567-244); (12) Cutter Horse Pendant (VA 1-162-559); (13) Hunt Seat Pendant (VA 1-162-559); (15) Large Reiner (VA 564-818) and (16) Large Western Pleasure Horse (VA 564-818); (18) Large Riderless Western Pleasure Pendant (VA 1-110-802); (19) Riderless Huntseat Pendant (VA 1-094-239); (20) Riderless Reiner (VA 1-094-239); (21) Cutting Horse Pin (VA 1-110-802); (22) Medium Reining Pendant (VA 1-096-758); (23) Large Halter Horse Pendant (VA 1-099-105); (24) Halter Pendant (VA 873-384).

[5]Section 106(3) sets out a copyright owner's exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3).

this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord . . ." 17 U.S.C. § 109(a). In other words, the first-sale doctrine allows the owner of a copyrighted work the exclusive right, under § 106(3), to control its distribution, but only in the *first* sale of each copy, not any subsequent sales. As the Supreme Court has noted,

> The whole point of the first sale doctrine is that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution. As we have recognized, the codification of that doctrine in § 109(a) makes it clear that the doctrine applies only to copies that are "lawfully made under this title". . .

*Quality King Distribs, Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998).

Defendants assert, relying on Defendant Kelly Herd's deposition and affidavit, they received these jewelry pieces from customers who traded them for discounts on new pieces sold by Defendants (Court File No. 44 at 6-7; Court File No. 44, Deposition of Kelly Herd ("Kelly Herd Depo.") pp. 175-78; Kelly Herd Aff. ¶ 10). Thus, Defendants argue, any resale of these items by Defendants would be protected by the first-sale doctrine from a copyright infringement claim. Plaintiffs argue "a genuine dispute exists between the parties as to whether Defendants' [sic] actually reproduced the works purchased or took them in on trade," citing the deposition of Plaintiff Lisa Perry (Court File No. 38 at 7; Lisa Perry Depo at 201-04). Plaintiffs essentially argue there never was a legitimate, lawful "first sale" of these copies, because they were infringing copies produced by Defendants rather than authorized copies sold previously by Plaintiffs, therefore the first-sale doctrine is of no relevance.

Defendants have provided no documentation other than Defendant Kelly Herd's statements showing these copies were "lawfully made." The Sixth Circuit has not addressed the issue of which

party bears the burden of proof on the first sale doctrine in a civil case. However, at least one district court in the Sixth Circuit and a majority of other district courts have held the defendant in a civil case bears the burden of proving the copy at issue was "lawfully made" under the Copyright Act before it may invoke the first sale defense. See *Too, Inc. v. Kohl's Dept. Stores, Inc.* 2002 WL 31409852, *3 (S.D. Ohio 2002) (*citing Microsoft v. Harmony Computers & Elecs., Inc.*, 846 F.Supp. 208-212-14 (E.D.N.Y.1994)) ("The alleged infringer bears the burden of tracing the chain of title to prove that the first sale doctrine applies."); see also *Mapinfo Corp. v. Spatial Re-Engineering Consultants*, 2004 WL 26350 (N.D.N.Y. Jan. 5, 2004); *Lingo Corp. v. Topix, Inc.*, 2003 WL 223454 (S.D.N.Y. Jan. 31, 2003); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1008 (D. Tex. 2000); but see *Mouzon v. Optimism, Inc.*, 942 F.2d 792 (Table), available at 1991 WL 164255 at *2 (9th Cir. 1991) ("In order to shift the burden of proof to [the defendant] under the first sale doctrine, plaintiff is required to show that the first sale was unlawful.").

Additionally, the legislative history of the Copyright Act indicates its drafters intended the burden of proof to rest on a defendant asserting this defense, because the defendant will be in the best position to prove the copy was "lawfully made." Notes of Comm. on the Judiciary, H.R.Rep.No. 94-1476, U.S.Code Cong. & Admin.News 1976, p. 5659, reprinted as "Historical Note" to 17 U.S.C. § 109.

Viewing the facts in the light most favorable to Plaintiffs, as the Court must do in ruling on a summary judgment motion, *Matsushita*, 475 U.S. at 587-88, the Court finds Defendants have not met their burden of proving the copies at issue were "lawfully made" because they have not put forth any probative evidence and Plaintiffs have raised a genuine issue of disputed fact about whether those copies actually were trade ins. Therefore, the Court will **DENY** Defendants' motion for

summary judgment based on the first sale doctrine defense.

## IV.  DISCUSSION:  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A.  Counterclaims

For clarity, the Court will refer to Plaintiffs as Counter-defendants and Defendants as Counter-plaintiffs in this portion of its Memorandum assessing Counter-defendants' motion for summary judgment regarding the counterclaims (Court File No. 41).

### 1.  Work for Hire

Counter-plaintiffs in their counterclaim assert Counter-defendants "have been manufacturing, marketing and selling copies of jewelry that they produced as a 'work for hire' for the Counter-Plaintiff's predecessor-in-interest, Mrs. Lola Herd d/b/a Gold Creations" without any permission to do so (Court File No. 5, Counterclaim ¶ 16).  Counter-defendants in their motion for summary judgment (Court File No. 41) assert, although Mrs. Herd and Counter-defendant Lisa Perry did have a business relationship in which Mrs. Perry created wax carvings that were made into jewelry pieces, those pieces were not works Mrs. Perry made for hire such that Counter-plaintiffs own the copyrights to the designs.  Therefore, Counter-defendants argue, because Counter-plaintiffs did not own any copyright in those pieces, Counter-defendants' actions with regard to those pieces was not infringement.

Under the Copyright Act, "[c]opyright in a work protected under this title vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  The Supreme Court has stated "[a]s a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Cmty. for Creative*

25

*Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (*citing* 17 U.S.C. § 201).   However, the Act

contains an exception to this general rule:  "[i]n the case of a work made for hire, the employer or

other person for whom the work was prepared is considered the author for purposes of this title, and,

unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all

of the rights comprised in the copyright."  17 U.S.C. § 201(b).

In order to determine whether a work qualifies as a "work made for hire" under the

Copyright Act, the Court must turn to the section of the Act defining various terms used within the

Act, 17 U.S.C. § 101.  That section defines a "work made for hire" as

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.  The Supreme Court has read this section quite literally, dividing all works made

for hire into two groups:  those made by employees, which qualify as works for hire under

subsection (1), and those made by independent contractors, which qualify as works for hire under

subsection  (2) *only if* they fall in one of the nine categories listed in that subsection.  *Cmty. for*

*Creative Non-Violence v. Reid*, 490 U.S. at 741 ("Section 101 plainly creates two distinct ways in

which a work can be deemed for hire: one for works prepared by employees, the other for those

specially ordered or commissioned works which fall within one of the nine enumerated categories

and are the subject of a written agreement.").

Counter-plaintiffs do not contend Counter-defendant Lisa Perry created the works in question

as an "employee" but rather refer to an oral contract under which Counter-plaintiffs commissioned

Counter-defendant Lisa Perry to carve pieces and paid her for her work, implicitly conceding she was an independent contractor (*see* Court File No. 45 at 4-7; *see also* Lola Herd Depo. at 29; Lisa Perry Depo. at 392). Because of this, subsection (1) clearly has no application here and the Court's analysis will focus on whether these works qualify as works for hire created by an independent contractor under subsection (2). *See id.*

Counter-plaintiffs do not allege anywhere in their briefs the works Counter-defendant Lisa Perry created pursuant to their agreement, wax carvings to be used in producing pieces of jewelry, fall within any of the nine categories in subsection (2) of 17 U.S.C. § 101. Instead, Counter-plaintiffs argue, relying exclusively on § 201(b), as the "other person for whom the work [for hire] was prepared," they are automatically the author of those works and own the copyrights to them. 17 U.S.C. § 201(b). The fallacy of this argument is it ignores the first portion of § 201, which states it applies only "[i]n the case of a work made for hire," as well as the issue of whether these works qualify as "works made for hire" as the statute defines that term in § 101. If the work does qualify as a work for hire under § 101, Counter-plaintiffs are correct, they are the authors and own the copyrights, but if not, § 201(b) gives them no rights simply because they are the "other person for whom the work was prepared."

Because Counter-plaintiffs concede these works were created by Counter-defendant Lisa Perry as an independent contractor rather than an employee, and they do not fall in any of the nine categories listed in the statute as works for hire made by independent contractors, these works do not qualify as "works made for hire." 17 U.S.C. § 101. Because they are not works for hire, Counter-plaintiffs have no ownership interest in them. 17 U.S.C.§ 201. Therefore, Counter-plaintiffs cannot meet the first element of the copyright infringement test, ownership of a valid

copyright in the work at issue. *Lexmark,* 387 F.3d at 534. Accordingly, the Court will **GRANT** Counter-defendants' motion for summary judgment and will **DISMISS** all of Counter-plaintiffs' copyright infringement claims based on works it asserted Counter-defendant Lisa Perry created as works for hire.

### 2. No Infringement Possible Because Counter-defendants Created Allegedly Infringing Works First

Counter-defendants next argue they could not have infringed three of Counter-plaintiffs' works, barrel racer designs with registration numbers VA 731-072 and VA 731-096, and a reining horse design with registration number VA 731-084, because Counter-defendants' similar works, barrel racers and a reining horse included in Counter-defendants' 1987 Horse Collection with registration number VA 583-009, were created several years prior to those created by Counter-plaintiffs (Court File No. 41 at 12-13). As noted above with regard to the same lack of access argument made by Defendants in their motion for summary judgment, "[b]y simple logic, it is impossible to *copy* something that does not exist." 4-13 Nimmer, § 13.02. Counter-plaintiffs concede in their response to this motion for summary judgment Counter-defendants may not have violated their copyrights in those three works[6] (Court File No. 45 at 8). Therefore the Court will **GRANT** Counter-defendants' motion for summary judgment as to any claims of infringement Counter-plaintiffs may base on their works with registration numbers VA 731-072, VA 731-096, and VA 731-084 being infringed by Counter-defendants' works with registration number VA 583-009.

---

[6]Counter-plaintiffs list as the third work in this list Counter-defendants' work registered as VA 583-009. The Court believes this was a typographical error and Counter-plaintiffs intended to list their work, registered as VA 731-084 as the work being infringed, rather than one of Counter-defendants' works (*see* Court File No. 45 at 8; Court File No. 41 at 12).

The Court would note it is not addressing any of Counter-plaintiffs' claims with regard to other works copyrighted by Counter-plaintiffs they allege Counter-defendants infringed by manufacturing, marketing, and selling infringing copies without permission (*see* Court File No. 5, Counterclaim ¶ 17) because Counter-defendants did not make this argument as to those works in its motion for summary judgment. For that reason, those claims will proceed to trial.

**B.      Defenses to Plaintiff's Claims**

Plaintiffs next move for summary judgment on three defenses to their claims Defendants asserted in their Answer (Court File No. 5) and request the Court strike those defenses.

### 1.      Works for Hire Defense

Plaintiffs request an order striking this as a defense to their claims of copyright infringement because they argue none of the works upon which they base their claims were works Plaintiff Lisa Perry made as works for hire for Defendants' predecessor-in-interest Lola Herd (Fifth Defense, Court File No. 5 at 7). Defendants did not address this in their response to this motion (Court File No. 45). To the extent Defendants raise this defense with the same rationale as that used with regard to their counterclaims based on ownership through works for hire, addressed above, the Court will **GRANT** Plaintiffs' motion for summary judgment and will **STRIKE** that defense from their Answer (Court File No. 5, p. 7) pursuant to Fed. R. Civ. P. 12(f).

### 2.      Joint Authorship Defense

Plaintiffs also argue their works were not jointly authored with Defendants' predecessor-in-interest Lola Herd, which Defendants assert as a defense in their Answer (Sixth Defense, Court File No. 5 at 7), and request an order striking that defense. The Copyright Act sets out the initial ownership of a work as follows: "Copyright in a work protected under this title vests initially in the

author or authors of the work.  The authors of a joint work are co-owners of copyright in the work."  17 U.S.C. § 201(a).  The Act further defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  As noted above, the Supreme Court has stated "[a]s a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Cmty. for Creative Non-Violence*, 490 U.S. at 737.

The courts of appeal are split on the question of how to determine whether a party may claim joint authorship status and an ownership interest in a copyrighted work, and the Sixth Circuit has not explicitly adopted either the *de minimis* test suggested by Professor Nimmer or the copyrightable subject matter test proposed by Professor Goldstein and adopted in some form by most courts to consider the issue.  *See Balkin v. Wilson*, 863 F.Supp. 523, 527 (W.D. Mich.1994).  Professor Nimmer, in explaining his *de minimis* standard, states, "[i]t is not necessary that the respective contributions of several authors to a single work be equal, either quantitatively or qualitatively, in order to constitute them as joint authors.  However, each such contribution must, in any event, be more than *de minimis*.  That is, a person must add more than a word or a line to qualify as a joint author."  1 Nimmer, § 6.07 at 6-21.  Professor Nimmer rejects the idea a person's contribution to a work must be, standing alone, copyrightable in order for that person to qualify as a joint author.  *Id.*  Professor Goldstein's "copyrightable subject matter" standard, by comparison, states "[a] collaborative contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright."  1 Paul Goldstein, Copyright: Principles, Law, and Practice

§ 4.2.1.2, at 379 (1989) (hereinafter "Goldstein").  Furthermore, Professor Goldstein's test requires the parties must have intended to be joint authors at the time the work was created.  *Id.*

While the Sixth Circuit has not explicitly chosen one test over the other, it has held, albeit in an unpublished opinion, "[p]roviding sketches, ideas or supervision over copyrightable material is not sufficient to make one a joint author." *BancTraining Video Systems v. First American Corp.*, 956 F.2d 268 (Table), available at 1992 WL 42345 at *3 (March 3, 1992) (citing *M.G.B. Homes, Inc. v. Ameron Homes Inc.*, 903 F.2d 1486, 1493 (11th Cir.1990); *S.O.S. Inc. v. Payday Inc.*, 886 F.2d 1081, 1086 (9th Cir.1989); *Ashton-Tate Corp. v. Ross*, 728 F.Supp. 597 (N.D. Cal.1989), aff'd, 916 F.2d 516, 521 (9th Cir.1990); *Whelan Associates v. Jaslow Dental Laboratory Inc.*, 609 F.Supp. 1307, 1318-19 (D.Pa.1985), aff'd on other grounds, 797 F.2d 1222 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 877 (1987)).

Additionally, many of the cases cited by the Sixth Circuit in *BancTraining* did apply some form of the "copyrightable subject matter" test, and the Sixth Circuit cited Professor Nimmer's treatise with a "but see" signal, indicating it was contradictory to its holding.  *See id.*  One district court within the Sixth Circuit has applied the "copyrightable subject matter" test.  *Balkin,* 863 F.Supp. at 528.  Therefore the Court will apply Professor Goldstein's "copyrightable subject matter" test in evaluating Defendants' claim of joint authorship.

The first question, then, is whether Lola Herd's contribution to each work "represents original expression that could stand on its own as the subject matter of copyright."  1 Goldstein, § 4.2.1.2, at 379.  A party who merely comes up with the *idea* for a work is not an author under the Copyright Act, because the Act protects only the *expression* of ideas, not an idea itself.  17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any

idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"); see also *BancTraining,* 1992 WL 42345 at *3 (March 3, 1992).

Plaintiffs assert Lola Herd was not involved in the creation of the works at issue to the degree necessary to qualify as a joint author. As proof, Plaintiffs point to Lola Herd's testimony during her deposition her customers would bring ideas to her or request certain pieces, then she would make "a rough drawing, a rough sketch, but general idea," or find photos of horses and give them to Plaintiff Lisa Perry to carve into wax (Lola Herd Depo. at 62-63, *see also id.* at 37-39). Lola Herd testified Plaintiff Lisa Perry would then bring these ideas to life in her carvings (*id*. at 63). Mrs. Herd emphasized at several points in her deposition "[t]he customer's actually who designs all these pieces" and the ideas she brought to Plaintiff Lisa Perry were generated from customer demands (*id*. at 63, see also *id.* at 37-39). Lola Herd also testified she did not ever carve a wax because she is not artistically talented with her hands (*id*. at 50-51).

Defendants argue Lola Herd's contribution to the works was more significant than Plaintiffs would have the Court believe and she should be considered a joint author because her "suggestions drawings, and pictures were instrumental in Mrs. Perry's artistic process" (Court File No. 45 at 7). Defendants outline the same creative process involving Lola Herd bringing ideas to Plaintiff Lisa Perry about which Mrs. Perry testified in her deposition, described above, but also note Mrs. Herd's contributions included making suggestions for improvement to the wax carvings (Lola Herd Depo at 79). Lola Herd testified "[t]here was times when a leg had to be changed or head had to be raised or lowered or if the horse was too fat, or when I say too fat it was too heavy of a body, that we'd have to slither it down" (*id*. at 79). Defendants also note Lola Herd once requested Plaintiff Lisa

Perry create a second wax carving of one of her ideas because Mrs. Perry's original carving did not "achieve the desired result" (Court File No. 45 at 7; Lola Herd Depo at 79). However, in her deposition, Lola Herd actually testified she requested Plaintiff Lisa Perry carve a new wax in cases where "the customer would reject it. . .", not because Mrs. Herd herself had other design ideas (*id.*). Additionally, Defendants concede in some situations Lola Herd "would accept the wax carving as is" (Court File No. 45 at 7).

Defendants also argue because Plaintiff Lisa Perry listed her husband, Plaintiff George Perry, as a joint author on the copyright registrations for her works, and George Perry is not an artist and does not carve any waxes but merely makes suggestions to Lisa Perry as she carves, Lola Herd's similar contributions also merit joint authorship status (Court File No. 45 at 7-8; Lisa Perry Depo. at 449). The fact Plaintiff Lisa Perry listed Plaintiff George Perry on the copyright registration forms for her works as a joint author has no significance in the Court's analysis of Lola Herd's entitlement to joint author status, and comparing Mrs. Herd's contributions to George Perry's also is not helpful in that determination.

Neither Plaintiffs nor Defendants presented any argument or evidence relevant to the second question in the "copyrightable subject matter" test, whether Plaintiff Lisa Perry and Lola Herd intended to be joint authors at the time the work was created. The Second Circuit has found "[f]ocusing on whether the putative joint authors regarded themselves as joint authors is especially important in circumstances, such as the instant case, where one person . . . is indisputably the dominant author of the work and the only issue is whether that person is the sole author or she and another . . . are joint authors." *Childress v. Taylor*, 945 F.2d 500, 508 (2d Cir. 1991) (citing *Fisher v. Klein*, 16 U.S.P.Q.2d (BNA) 1795, 1798 (S.D.N.Y. 1990); *Picture Music, Inc. v. Bourne, Inc.*, 314

F. Supp. 640, 647 (S.D.N.Y. 1970), aff'd on other grounds, 457 F.2d 1213 (2d Cir.), cert. denied, 409 U.S. 997, 34 L. Ed. 2d 262, 93 S. Ct. 320, 175 U.S.P.Q. (BNA) 577 (1972)).

After evaluating the arguments put forward by each side on the joint authorship issue, the Court believes this question is a very close one, with the evidence presented by each side on the first prong of the test, whether each party contributed "original expression that could stand on its own as the subject matter of copyright," weighing evenly in the balance. 1 Goldstein, § 4.2.1.2, at 379; *Matsushita*, 475 U.S. at 587-88. Accordingly, viewing the evidence in the light most favorable to the non-moving party, Defendants, the Court must **DENY** Plaintiff's motion for summary judgment on this defense.

### 3. Fair Use Defense

Defendants concede in their response brief the fair use defense is not applicable in this case (Court File No. 45 at 8). Therefore, because no issues of material fact are in dispute and Plaintiffs are entitled to judgment as a matter of law on this issue, Fed. R. Civ. P. 56(c), the Court will **GRANT** Plaintiffs' motion for summary judgment and will **STRIKE** the fair use defense from the Answer (Court File No. 5, p. 7) pursuant to Fed. R. Civ. P. 12(f).

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment (Court File No. 28) will be **GRANTED IN PART** and **DENIED IN PART** and Plaintiffs' partial motion for summary judgment (Court File No. 41) will be **GRANTED IN PART** and **DENIED IN PART**.

An Order shall enter.

/s/_____
CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE